IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DONNA MARIE SHORT, | Civil Action No. 3:10-3275-SB-JRM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

This case is before the Court pursuant to Local Civil Rule 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on April 30, 2007,[1] alleging disability commencing on January 1, 1999. Tr. 17, 143-156. Plaintiff's SSI claim was denied initially and upon reconsideration.[2] Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at a hearing held on September 18, 2009. On January 13, 2010, the ALJ issued a decision denying SSI benefits and finding that Plaintiff was not disabled. The ALJ,

---

[1]This appears to be a protective filing date (the application is dated May 9, 2007- see Tr. 143). Plaintiff previously filed applications for DIB and SSI on October 11, 2006, alleging an onset date of January 1, 1999. Tr. 131. These claims were denied on February 5, 2007. Tr. 100, 104. No appeal was initiated.

[2]The history of Plaintiff's DIB claim is somewhat uncertain, as is discussed further below.

after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-four years old at the time of the ALJ's decision. She has a ninth grade education and past relevant work as a parts/puller/stocker. Plaintiff alleges disability due to a history of congenital dislocation of hips, fibromyalgia syndrome, probable borderline intellectual functioning, and adjustment disorder.

The ALJ found (Tr. 19-27):

1. The claimant has not engaged in substantial gainful activity since January 1, 1999, the alleged onset date (20 CFR 416.971, *et seq.*).

2. The claimant has the following severe impairments: a history of congenital dislocation of hips, fibromyalgia syndrome, probable borderline intellectual functioning, and adjustment disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she is limited to occasional pushing/pulling with bilateral lower extremities. She can never climb ladders, ropes or scaffolds but she can occasionally climb stairs, stoop, and crouch. She can frequently perform all other postural activities. She must avoid moderate exposure to hazards. She is limited to performing simple routine repetitive routine tasks for 2 hours at a time.

5. Claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 15, 1965, and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

7. The claimant has at least a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41) and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 30, 2007, the date the application was filed (20 CFR 416.920(g)).

The Appeals Council denied the request for review in a decision issued November 13, 2010. Tr. 1-4. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on December 27, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, supra.

**MEDICAL RECORD**

Plaintiff has an extensive history of multiple Shriner's Hospital admissions, commencing March 20, 1967 when she was approximately eighteen months old. At age two, Plaintiff had a closed reduction surgery of her left hip and Shriner medical notes of August 19, 1974 (age nine) report that she was being admitted for the eighth time for congenital dislocation of the hips, bilaterally. After that time, Plaintiff did not have any further surgeries, but continued to have complaints of bilateral hip pain. Tr. 684-707.

On January 18, 2007, Dr. Melvin Porter, Jr. conducted a consultative examination. He found that Plaintiff had normal strength and range of motion of both her upper and lower extremities, back flexion to 90 degrees, and normal passive range of motion of her hips and knees. Tr. 441-443. On May 31, 2007, Plaintiff was treated for hip pain at St. Francis Hospital after a fall. Tr. 591-592. A diagnostic x-ray of Plaintiff's right hip was performed and the radiology report revealed that there was bowing of the proximal femora bilaterally, likely a chronic process due to either old trauma or metabolic disorder. Tr. 594.

On September 6, 2007, Dr. Porter performed another consultative evaluation. He found that Plaintiff could only flex her back to 65 degrees, but she had only "mildly" decreased passive range of motion of both hips on abduction and adduction, no evidence of tender areas on palpation of her back, and no significant scoliosis. He diagnosed chronic bilateral hip pain, post-congenital hip dislocation, and chronic low back pain. Tr. 522-523.

In July 2007, Dr. Kurt Gandenberger, a physician who had treated Plaintiff approximately every two months for two years, completed a "fibromyalgia questionnaire" in which he opined that

4

Plaintiff was limited to less than sedentary work and that she was incapable of even low-stress jobs due to her impairments. Tr. 510-15.

On August 24, 2007, Dr. Bruce Kofoed, a psychologist, conducted a consultative examination. Dr. Kofoed noted that Plaintiff's mood was quite depressed and her affect was flat. His impression was major depression, recurrent, consider pain disorder with psychological factors and a medical condition. He also assessed chronic pain from a congenital hip problem with multiple surgeries in Plaintiff's childhood. As to Plaintiff's ability to engage in work-related tasks, Dr. Kofoed opined that Plaintiff has difficulty sitting and standing for long periods of time; that her work speed was moderately slow on simple attentional tasks; and her recall was fair for a recently learned four-word list was poor for less structured nonverbal information. Tr. 517-519.

Plaintiff was treated at the emergency room again on November 28, 2007, after suffering another fall. Tr. 587-590. An x-ray of Plaintiff's left knee showed osteoarthritis and small joint effusion on February 25, 2008. Tr. 575.

On July 22, 2008, Plaintiff underwent an examination by Dr. Donald Salmon, a psychologist. Plaintiff reported that she went to Greenville Mental Health on and off for many years and had anxiety and depression since childhood. Plaintiff did very poorly on a variety of cognitive tasks administered by Dr. Salmon. Dr. Salmon opined that Plaintiff had marked limitations with regard to her daily activities, social interaction, concentration, persistence, and pace. Tr. 605-609.

On December 26, 2008, Plaintiff was treated at St. Francis Hospital after suffering another fall. Tr. 616-617. X-rays of Plaintiff's right hip showed "mild degenerative change of the hips and bowing of both proximal femora with thickening of the medial cortext...no acute findings." Tr. 620.

On April 1, 2009, Plaintiff underwent a consultative examination with Dr. Joseph K. Hammond, a psychologist. Plaintiff reported she had been treated until a couple of years ago for what was believed to be depression and anxiety at Greenville Area Mental Health Center. IQ testing revealed scores of Full Scale 70, Verbal 71, and Performance 74. Dr. Hammond noted that he "[c]ould not rule out cognitive disorder, not otherwise specified such as borderline intellectual functioning in a claimant who describes symptoms consistent with chronic adjustment disorder with mixed emotional features of depression and anxiety." He opined that Plaintiff would likely have limitations in terms of persistent socialization and adjustment because of the combination of her chronic anxiety and somatic functions. Tr. 660-662.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that she last worked in 2002 driving a vehicle for a phone directory company. Tr. 43. When asked by the ALJ about the temporary agency work she did, Plaintiff stated that it was production work, which left her tired and in pain. Tr. 43-44. The ALJ asked if she had sought work through the South Carolina Department of Vocational Rehabilitation. Plaintiff replied that it took her two to three hours to get ready to go anywhere, and that Vocational Rehabilitation wanted her to get there "real early." Id. Plaintiff stated that she had difficulty performing the production line work because of the requirements of standing for long periods of time and lifting heavy objects. Tr. 44. Plaintiff also stated that driving for any period of time caused pain and stiffness. Tr. 45.

Plaintiff testified that she and her sixteen-year-old son live with a friend who helps her with house cleaning and cooking. Plaintiff complained of pain in her legs, knees, back, and hips. (Tr. 46). Plaintiff stated she took over-the-counter medicines which did not help with the pain and caused

gastroesophageal reflux disease ("GERD"). Plaintiff stated she was later prescribed Lortab, but no longer takes it. Tr. 47. When questioned by the ALJ about how long she could stand without sitting, Plaintiff stated she is only able to stand for 10 to 15 minutes at a time at the most without sitting down. When asked by the ALJ about sitting and working, Plaintiff responded that "I get real stiff...I'm not supposed to sit or stand more than 15 minutes at a time." Tr. 48.

Plaintiff testified that she had depression and anxiety, but was not under any psychiatric care. She stated that her memory was really bad, and she could not think straight, became overwhelmed and frustrated, and was unable to handle stressful situations. Tr. 49.

Plaintiff reported she spent her day watching television and listening to music and was only able to shop briefly and prepare small meals such as sandwiches. Tr. 58. Plaintiff stated she occasionally folds clothes, "a few at a time." Tr. 60.

## **DISCUSSION**

Plaintiff alleges that the ALJ: (1) failed to entirely adjudicate the application for DIB under Title II of the Social Security Act, beyond the reconsideration level of review; (2) applied an incorrect legal standard by failing entirely to assess opinion evidence from consultative psychologist Dr. Joseph Hammond; (3) applied an incorrect legal standard by failing to make a finding regarding whether the threshold for objective evidence is satisfied regarding Plaintiff's complaints of disabling pain; and (4) proffered a decision when substantial evidence (including the opinion of Plaintiff's treating physician) did not support a finding that Plaintiff could perform a wide range of medium, unskilled work. The Commissioner contends that this Court lacks jurisdiction to consider Plaintiff's claim for DIB because she failed to exhaust her administrative remedies. As to Plaintiff's SSI claim,

the Commissioner argues that the final decision is supported by substantial evidence[3] and free of reversible legal error.

A. DIB Claim

Plaintiff argues that this claim should be remanded because the Commissioner failed entirely to adjudicate the application for DIB (Title II benefits) beyond the reconsideration level of review. She argues that the ALJ's decision does not discuss the DIB application and makes no attempt to assess whether Plaintiff became disabled before her date last insured of September 30, 2001 (see Tr. 90), even though she alleges disability since January 1, 1999. Plaintiff argues that the record contains extensive evidence that the onset of her disability predated the date last insured. The Commissioner contends that this Court lacks jurisdiction to consider Plaintiff's claim for DIB because she failed to exhaust her administrative remedies as she did not request reconsideration of the initial denial of her April 2007 claim for DIB. The Commissioner, however, admits that the initial denial notice of Plaintiff's April 2007 claim for DIB is not part of the administrative record and has attached a copy of the denial notice to his brief.

The initial denial notice of Plaintiff's claim for DIB is not dated. Further, it is not a part of the administrative record. Thus, it is impossible to determine when and if Plaintiff received notice of the denial of her April 2007 claim for DIB. Counsel for Plaintiff states that he was not aware of

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Plaintiff's April 2007 application for DIB (and possibly the ALJ was not either) until he received the transcript such that he did not know that steps were needed to have the claim reconsidered/appealed. This action should be remanded to the Commissioner to adjudicate Plaintiff's claim for DIB.

B.      SSI Claim/Substantial Evidence

The ALJ's determination that Plaintiff could perform medium, unskilled work is not supported by substantial evidence. As to Plaintiff's mental impairments, the ALJ does not appear to have considered all of the evidence. Although the ALJ acknowledges that Plaintiff underwent a psychological evaluation by Dr. Hammond, he fails to fully discuss the opinion rendered by Dr. Hammond (at the consultative examination arranged by the Commissioner). Dr. Hammond opined that Plaintiff would have no difficulty carrying out simple instructions, mild difficulty making judgments on simple work-related decisions, and moderate limitations in every other domain of functioning he assessed. Dr. Hammond also opined that Plaintiff's "ability to respond appropriately to unusual work situations and to changes in a non-routine work setting appears markedly impaired." Tr. 658. The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d) and 416.927(d).

The Commissioner argues that the ALJ adequately considered Dr. Hammond's opinion by limiting her to unskilled work. It is unclear from the opinion, however, that the ALJ considered Dr. Hammond's full opinion. As this opinion may also support the opinions of the other consultative psychologists, it is unclear whether the ALJ's findings concerning Plaintiff's mental RFC is supported by substantial evidence. This action should be remanded to the Commissioner to consider all of the evidence as to Plaintiff's mental impairments.

The ALJ's determination that Plaintiff has the physical RFC to perform medium work in light of all of the evidence, including her long history of problems with her hips and the opinion of her treating physician (Dr. Gandenberger),[4] is not supported by substantial evidence. The ALJ discounted Dr. Gandenberger's July 2007 opinion (that Plaintiff would be limited to less than sedentary work and was incapable of even low-stress jobs) because Dr. Gandenberger did not include definitive clinical findings to support such functional restrictions; the opinion is contradicted by a treatment note from a nurse practitioner on August 23, 2007, that did not include any complaints of fibromyalgia; the opinion was inconsistent with the medical evidence; and the July 2007 opinion was inconsistent with Dr. Gandenberger's opinion on October 31, 2006. Tr. 26. The Commissioner argues that the ALJ properly discounted Dr. Gandenberger's opinion because it was not supported by definitive clinical findings and was inconsistent with objective medical evidence including Dr. Gandenberger's treatment notes which revealed numerous medication refills, but little in the way of clinical findings.

---

[4]The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Gandenberger's July 2007 opinion is not supported by substantial evidence. Contrary to the ALJ's decision, Dr. Gandenberger's October 2006 opinion, which only concerned Plaintiff's mental condition, does not appear to contradict his July 2007 opinion concerning Plaintiff's physical and mental impairments. In the October 2006 mental impairment opinion, Dr. Gandenberger noted that Plaintiff had anxiety and panic disorder which would cause moderate work-related functions. Tr. 424. It is also unclear how treatment notes from a nurse practitioner in August 2007, for what appears to be a visit for complaints of a persistent cold, contradicts Dr. Gandenberger's July 2007 opinion.

The ALJ also does not appear to have properly evaluated Plaintiff's credibility under the two-part test.[5] The Commissioner contends that the ALJ's decision concerning Plaintiff's credibility is supported by a lack of objective medical findings, the type of pain medication she took, the treatment she received, and Plaintiff's daily activities, but does not address the failure of the ALJ to apply the two-part test. Here, the ALJ does not appear to have made a finding at step one of the process as to whether Plaintiff had an impairment capable of producing the pain alleged.

---

[5]In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence and correct under controlling law. This action should be remanded to the Commissioner to evaluate Plaintiff's DIB (Title II) claim. Additionally, this action should be remanded to the Commissioner as to Plaintiff's SSI claim to determine Plaintiff's mental and physical RFC, evaluate the opinion of Plaintiff's treating physician (Dr. Gandenberger), and evaluate Plaintiff's credibility in light of all of the evidence.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

March 1, 2012
Columbia, South Carolina